UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-020

| | | |
|---|---|---|
| **EDWARD C. POST,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 13) and Commissioner's Motion for Summary Judgment (Doc. No. 17). Having carefully considered the motions and reviewed the record, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.  Administrative History

Plaintiff Edward C. Post ("Post" or "Plaintiff") filed his application for Supplemental Security Income ("SSI") on April 26, 2011, alleging a disability since October 1, 1997. The onset date was subsequently amended to April 26, 2011. After Plaintiff's claim was denied, he requested and was granted a hearing before Administrative Law Judge Richard H. Harper ("Judge Harper"). Judge Harper issued a decision denying the claim on January 17, 2013. On April 22, 2014, the Appeals Council remanded the case for further proceedings.

On remand, a hearing was held before Administrative Law Judge Susan Poulos ("the ALJ") on April 8, 2015. On June 24, 2015, the ALJ issued a decision denying the claim. On

November 7, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action, seeking judicial review of the ALJ's decision.

## II.     Factual Background

In her decision, the ALJ at the first step determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 41). At the second step, the ALJ concluded that Plaintiff has the following severe impairments: status post mechanical accident in 2002 resulting in amputation of three fingers on the left hand and part of the left thumb, and mental impairment variously diagnosed as bipolar disorder, mood disorder NOS, post-traumatic stress disorder (PTSD), and personality disorder NOS. (*Id.*). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 42).

After a consideration of the entire record, the ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> no handling and fingering with the left hand; simple, routine, repetitive tasks; one to two step instructions; simple decision making; few if any changes; occasional interaction with the general public and coworkers; and the left upper extremity used only to assist in lifting.

(Tr. 43). The ALJ found in the fourth step that Plaintiff does not have any past relevant work. (Tr. 49). Finally, at the fifth step, the ALJ concluded based on Plaintiff's limitations that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 50).

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

### IV. Discussion

On appeal, Plaintiff asserts that the ALJ erred in her decision, alleging that (1) she failed to properly weigh the medical opinion evidence regarding his mental impairments, (2) she erred in finding that Plaintiff has the RFC to perform work at all exertional levels, and (3) she failed to rely on a previous finding of disability by the Social Security Administration. After reviewing both parties' memoranda, the ALJ's decision, the administrative record, and relevant case law, the Court finds that the ALJ's decision must be affirmed.

#### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in assessing his mental impairments in light of the opinions given by a consultative examiner, Dr. Sara Cornell, and his treating therapist, Mr. David Keyes.

The two opinions differ with respect to their evaluation of Plaintiff's social functioning. Dr. Cornell opined that Plaintiff had no restrictions in interacting appropriately with the public,

slight restrictions in interacting appropriately with supervisors and co-workers, and moderate restrictions in responding appropriately to work pressures in a usual work setting and to changes in a routine work setting. (Tr. 530). Mr. Keyes, on the other hand, opined that Plaintiff's ability to interact appropriately with the general public, maintain socially appropriate behavior, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without unduly distracting them or exhibiting behavioral extremes, and respond appropriately to changes in a routine work setting was "poor or none." (Tr. 589 591).

After examining the evidence, the ALJ assigned "great weight" to the opinion Dr. Cornell and "less weight" to the opinion of his treating therapist, Mr. Keyes. (Tr. 46, 47). Accordingly, the ALJ limited Plaintiff to "few if any changes" and "occasional interaction with the general public and coworkers" in her RFC determination. (Tr. 43).

Plaintiff claims that the ALJ erred by assigning less weight to the opinion of his treating physician, Mr. Keyes. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c)(2). But, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Here, the ALJ found that the opinion of Mr. Keyes was not entitled to controlling weight because it was "not fully consistent with the treatment records, which show improvement." (Tr. 47). The ALJ relied on statements in Mr. Keyes' questionnaire that Plaintiff was improving and had seen a decrease in the intensity of his emotions. (*Id.*, Tr. 587). The ALJ

4

also found that after Mr. Keyes filled out the questionnaire, he did not return for treatment for five months. When he did return, Mr. Keyes noted that while Plaintiff still had issues with anger, the intensity had lessened. (Tr. 602). Further, the ALJ noted that Mr. Keyes only had a "handful" of visits with Plaintiff. (Tr. 47). Thus, the ALJ had substantial evidence supporting her finding that Plaintiff's trajectory of improvement, absence from treatment, and subsequent identified improvements show that Mr. Keyes' opinion was not fully consistent with the treatment record. And while the ALJ assigned Mr. Keyes' opinion less than controlling weight, she still took it into account in limiting the Plaintiff to only "occasional interaction with the general public and coworkers." (*Id.*).

Plaintiff also claims that the ALJ erred by giving Dr. Cornell's opinion great weight. An ALJ is required to consider six factors in determining what weight to give an evaluating medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c). Plaintiff argues specifically that Dr. Cornell's opinion was not supported by the observations and conclusions in her report because she found that Plaintiff had a GAF of 35 and a prognosis of "poor." (Tr. 535). However, the ALJ assessed Dr. Cornell's opinion in light of those findings and in light of her observations that Plaintiff showed fair social skills, interacted appropriately, was polite and cooperative. (Tr. 46, 531). Accordingly, the ALJ appropriately assessed the relevant information and arrived at a conclusion that is supported by substantial evidence.

### B. Exertional Limitations

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform work at all exertional levels. The ability to perform work at all exertional levels would include "very heavy work," which "involves lifting no more than 100 pounds at a time with frequent lifting or

carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567(e).

The ALJ found that Plaintiff could perform work at all exertional levels, but added non-exertional limitations because of the pain and loss of fingers that Plaintiff suffers on his left hand. Specifically, the ALJ found that Plaintiff was restricted from handling and fingering with his left hand, and she found that Plaintiff's left upper extremity could only be used to assist in lifting. (Tr. 43). Plaintiff claims that these non-exertional restrictions are inconsistent with the ability to perform the lifting requirements of any exertional level.

However, a restriction to use one arm solely to assist in lifting does not inherently undermine the ability of the Plaintiff to lift up to 100 pounds. In fact, during the hearing, Plaintiff testified that he could "pick up off the ground 100 pounds with [his] right arm," even though he had difficulty with holding onto more than a 5-pound dumbbell with his left hand. (Tr. 78). Thus, the ALJ's finding on Plaintiff's exertional limitations was supported by substantial evidence.

### C. Previous Finding of Disability

Plaintiff argues that the ALJ erred in light of the fact that he had been found to be disabled in a prior adjudication.

When a claimant files a second or successive application for disability benefits alleging a previously unadjudicated period of disability, "principles of claim preclusion (traditionally referred to as res judicata) do not apply." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 476 (4th Cir. 1999). This is because "[r]es judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). However, pursuant to the Fourth Circuit's rulings in *Albright* and *Lively v. Sec'y Health & Human Servs.*, 820 F.2d

1391 (4th Cir. 1987), a finding in a prior adjudication carries persuasive weight. *Id.* at 477.

As interpreted by the Social Security Administration in AR 00-1(4), *Albright* requires an adjudicator to "consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances." An adjudicator should examine the prior finding in light of (1) whether the facts supporting the finding are subject to change, (2) the likelihood of such change in light of the passage of time, and (3) the existence of new evidence that provides the basis for a different finding. AR 00-1(4). "An ALJ does not necessarily have to walk through each factor in order to comply with AR 00-1(4); rather, reviewing and evaluating all the evidence presented at the correct standard complies with the acquiescence ruling." *Grant v. Colvin*, No. 4:12cv191, 2014 WL 852080, at *7 (E.D. Va. 2014).

*Albright* makes clear that the probative value of a prior finding is highly time sensitive. 174 F.3d at 477. The Fourth Circuit noted that while "we might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, we would grow ever less confident as the timeframe expands. *Id.* And as applied in *Albright*, where the relevant period exceeded three years, the Court held that any "swagger becomes barely discernible." *Id.*

Here, there is more than an eleven year gap between Plaintiff's prior approval for SSI benefits in April 2004 and the ALJ's decision in June 2015. The Appeals Council previously remanded this case to the ALJ with instructions to consider evidence from prior findings of disability in light of *Albright*. (Tr. 180–81). On remand, the ALJ attempted to obtain the 2004 decision but found that it had been purged after ten years. (Tr. 38–39). If a prior decision is lost or destroyed, an ALJ of course cannot fully consider its impact on current proceedings. *See* HALLEX I-5-4-66. However, the ALJ nonetheless identified medical evidence which

presumably would have been used in the 2004 decision, included it in the record, and assessed its probative value. (Tr. 39).

The ALJ found that the prior evidence was about ten years old and was much closer to the date of Plaintiff's accident. With respect to Plaintiff's physical injuries, the ALJ found that Plaintiff had learned to adapt and adjust over the course of the ten-year period since his finger amputations. And with respect to Plaintiff's mental limitations, as discussed above, the ALJ found that Plaintiff has showed improvement over time. Accordingly, she gave the prior evidence little weight in light of the length of time since the prior adjudication and the new evidence presented. Thus, the ALJ satisfied the requirement to consider findings and evidence of prior rulings under *Albright*.

## V. Conclusion

Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. **IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**;

(3) Commissioner's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: April 9, 2018

Graham C. Mullen
United States District Judge